John P. CLIME, Plaintiff,

v.

DEWEY BEACH ENTERPRISES, INC., d/b/a Rusty Rudder Restaurant, Defendant and Third–Party Plaintiff,

Copp's Seafood, Defendant and Third–Party Defendant.

Civ. A. Nos. 92–279, 92–367 MMS.

United States District Court, D. Delaware.

Aug. 20, 1993.

Marla Rosoff Eskin, of Jacobs & Crumplar, Wilmington, DE (Michael D. Fishbein of Levin, Fishbein, Sedran & Berman, Philadelphia, PA, of counsel), for plaintiff.

Michael P. Joseph of Ferry, Joseph & Fink, P.A., Wilmington, DE (Donald C. Allen, of Allen, Johnson, Alexander & Kapp, Baltimore, MD, of counsel), for defendant and third-party plaintiff.

Roy S. Shiels of Brown, Shiels & Chasanov, Dover, DE, for defendant and third-party defendant.

OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

## I. INTRODUCTION

Plaintiff John P. Clime became ill after eating clams in the Rusty Rudder Restaurant located at Dewey Beach, Delaware. Thereafter, he brought suit, sounding in negligence and breach of implied warranty of merchantability against Dewey Beach Enterprises, Inc. d/b/a Rusty Rudder Restaurant ["Rusty Rudder"] and the supplier of the clams, Copp's Seafood. The Rusty Rudder filed a Third Party Complaint against Copp's seeking contribution and indemnity. The Rusty Rudder and Copp's now request this Court enter summary judgment against plaintiff. Copp's also asks this Court enter summary judgment in favor of it on the Rusty Rudder's claim for indemnification on the issue of implied warranty of merchantability. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332 (1988).

## II. BACKGROUND

On July 27, 1990, plaintiff went to the Rusty Rudder Restaurant and ate from the buffet. Docket Item ["D.I."] 72 at 501(b)–02(b). He arrived early and approached the raw bar just as the attendant began shucking the clams. *Id.* at 507(b). The unshucked clams were in a box or burlap bag that was on the floor beside the employee. *Id.* at 511(b). The attendant placed the clams on ice as he shucked them, and plaintiff served himself from there. *Id.* at 510(b). Copp's Seafood was the Rusty Rudder's clam supplier at the time. *Id.* at 611(b).

Within days plaintiff was admitted to the hospital and later diagnosed as having vibrio septicemia, the apparent cause of which was ingestion of the bacteria vibrio vulnificus, an organism often contained in raw shellfish. *Id.* at 122(b)–23(b), 147(b)–48(b), 517(b)–520(b). Expert testimony reveals that most people need not fear ingestion of the bacteria by reason of eating raw shellfish as they face, at worst, mild digestive tract discomfort. However, some individuals, those with compromised immune systems or cirrhosed livers, may suffer a much more debilitating form of infection known as vibrio septicemia. *Id.* at 126(b)–29(b). Plaintiff, an alcoholic with cirrhosis of the liver, D.I. 61 Ex. E at 4–10, suffered this more serious injury.

## III. STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c) summary judgment

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Fed.R.Civ.P. 56(c). Summary judgment will not be entered where there exists a genuine and material issue of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). An issue is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. A fact is material if, under the relevant substantive law, determination of such fact might affect the outcome of the case. *Id.*

The Court should refrain from making credibility determinations in deciding if there exists a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It should instead draw all inferences in favor of the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If the movant demonstrates the absence of a genuine issue of material fact, however, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" to prevent its entry. *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56. The non-movant must do more than provide a mere scintilla of evidence supporting his or her case. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512.

The moving party has the initial burden of identifying those parts of the pleadings, depositions, answers to interrogatories, admissions and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The non-movant then has the burden of demonstrating the presence of a genuine issue of material fact. If the non-movant is the party who will bear the burden of proof at trial, that party must show it will not be impossible for him or her to establish the existence of that element essential to his or her case which has been challenged by the movant. *Id.* at 322–23, 106 S.Ct. at 2552–53; *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988). If the non-movant fails to do so, "[t]here can be 'no genuine issue · as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## IV. DISCUSSION

██ Plaintiff has brought suit against the Rusty Rudder and Copp's alleging both negligence and breach of the implied warranty of merchantability.[1] At oral argument plaintiff advised the Court that he had abandoned his claim of negligence against Copp's. There is left plaintiff's claim of negligence against the Rusty Rudder, plaintiff's claim for breach of the implied warranty against both the Rusty Rudder and Copp's, and the Rusty Rudder's claim against Copp's for indemnity on the issue of breach of the implied warranty.

### A. NEGLIGENCE

██ To prove his negligence claim against the Rusty Rudder plaintiff must show it owed a particular duty to plaintiff, defendant breached that duty and defendant's breach caused injury to plaintiff. Here the Rusty Rudder challenges plaintiff's ability to demonstrate a breach of duty and causation. The argument as to duty focuses on the characteristics of vibrio vulnificus and the

---

1. Delaware law applies to these state law claims. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58

S.Ct. 817, 82 L.Ed. 1188 (1938).

necessity for care in the handling of clams to meet the potential danger posed by the bacteria. Defendant's argument as to causation is not that plaintiff's illness was unrelated to the ingestion of vibrio vulnificus. Instead, it asserts that notwithstanding such relationship the true cause of plaintiff's illness was the cirrhotic condition of his liver caused by alcohol abuse.

### 1. Duty

■ Plaintiff alleges the Rusty Rudder was negligent in failing to maintain the clams eventually ingested by plaintiff under refrigerated conditions at all times. Under plaintiff's theory of the case in order to prove defendant owed a duty to him, plaintiff must show: (1) the bacteria vibrio vulnificus is potentially harmful to humans if ingested; (2) the potential health risk posed by any vibrio vulnificus occurring naturally in clams is increased by storing clams above approximately forty-five degrees fahrenheit; and (3) a person of ordinary prudence would store clams at or below such temperatures at all times in order to avoid the potential harmful effects of the bacteria.

Defendant challenges plaintiff's ability to establish defendant owed plaintiff a duty of care to store the clams below approximately forty-five degrees fahrenheit. According to defendant no reasonable jury could find the clams should have been stored this way because there is nothing in the evidentiary record to support plaintiff's assertion that storage above approximately forty-five degrees increases potential health risks to hu-

mans upon ingestion. Defendant is incorrect. The Rusty Rudder's appendix contains a report by plaintiff's expert Marvin E. Winston that specifically states, "[M]ishandling of raw clams by storing above forty-five degrees fahrenheit will allow growth of the vibrio vulnificus and increase the potential for risk to human health." D.I. 61 Ex. F.[2] In addition, the Rusty Rudder's expert Dr. Morris testified the industry practice is to refrigerate shellfish at approximately forty-five degrees fahrenheit right up until the time the customer ingests them. D.I. 72 at 157(b)–59(b). Furthermore, state health regulations require shellfish suppliers to maintain their stock at fifty degrees fahrenheit or below and public eating places are required to refrigerate clams at or below forty-five degrees. D.I. 72 at 312b–315b.

The record contains evidence from which a jury could find defendant owed a duty to plaintiff to maintain the clams eventually eaten by plaintiff at or below approximately forty-five degrees fahrenheit up until the point plaintiff received them. Summary judgment will not be granted to defendant on this ground.[3]

### 2. Breach of Duty

In order for plaintiff to prevail against the Rusty Rudder at trial he will have to show defendant breached its duty to plaintiff by failing to store the clams eaten by plaintiff at or below approximately forty-five degrees fahrenheit. Defendant asserts it is entitled to summary judgment because there is no evidence in the record on which plaintiff may

---

**2.** Plaintiff also makes reference to scientific reports which support his theory that cold storage is necessary to avoid the potential health threat from ingestion of the bacteria. Defendant challenges the ability of the Court to consider such information claiming such reports are hearsay not falling within the learned treatise exception of Fed.R.Evid. 803(18) because the requirements of that rule have not been met. It also challenges the scientific merit of such reports. The Court need not address this evidentiary issue at this juncture because plaintiff, by virtue of Mr. Winston's report, has raised a genuine issue of material fact sufficient to preclude the grant of summary judgment on the negligence issue.

**3.** Defendant the Rusty Rudder's reply brief also alludes to the theory that it owed no duty to plaintiff because the injury to Mr. Clime was not

foreseeable. On deposition, defendant's expert on infectious disease, Dr. Morris, testified that in general physicians in the Delaware and surrounding areas are ignorant of the danger posed by vibrio vulnificus because of its rarity. He also expressed the opinion that people in the industry of handling raw shellfish in the states of Maryland and Delaware are likewise unaware of the danger presented by vibrio vulnificus. D.I. 72 at 175b. However, what is relevant to the issue of foreseeability is not whether a defendant such as the Rusty Rudder knew of the dangers posed by vibrio vulnificus. What is relevant is whether such a defendant should foresee a consumer might be injured by mishandled shellfish. On this question defendant presents no argument. Defendant's protestations of unforeseeability are unavailing.

rely to establish this element of his claim. The Court disagrees.

Plaintiff recites that for the time period 1989 to 1991, inspections of the Rusty Rudder by the Delaware Department of Health and Human Services have found conditions to be less than optimal. He points to nothing in the record, however, showing any of the Rusty Rudder's deficiencies were related to the handling of shellfish. Defendant, on the other hand, points out that at deposition Richard V. May, then inspector for the Department of Health, stated that there is no record of any violation by the Rusty Rudder relating to the storage, retention or serving of shell fish. D.I. 72 at 320(b). Mr. May further testified that at the time he inspected the Rusty Rudder prior to July of 1990, he monitored the temperature of some stored shellfish as well as the refrigeration units and found no indication that shellfish was being stored above forty-five degrees fahrenheit. *Id.* at 320(b)–322(b). Plaintiff cannot rely on Department of Health inspections to support his assertion the clams he ate were mishandled.

Plaintiff also offers the testimony of Clifford A. Copp, owner and operator of Copp's seafood, the firm which supplied the clams eaten by plaintiff. Mr. Copp alleges that at times during the summer of 1990 he was asked to leave the clams he was delivering either in the kitchen or out on the dock where it was very warm, rather than in the cooler where the clams would have been refrigerated. D.I. 72 at 60(b)–66(b). Such testimony cannot support plaintiff's assertion of improper handling of the clams he consumed, particularly in light of Copp's testimony that the batch of clams he delivered on July 26, 1990, apparently the last to be delivered before plaintiff's meal, were placed in the walk-in cooler. D.I. 72 at 85(b).

Finally, plaintiff contends his testimony and the testimony of another restaurant patron as to the condition of the clams at the raw bar demonstrates the clams plaintiff consumed were improperly handled. The Court agrees. Plaintiff stated that he arrived at the raw bar that night just as the attendant had begun to shuck the clams. *Id.* at 507(b). He took the clams from the ice where the attendant placed them as he shucked them. *Id.* at 510(b). Plaintiff stated that the attendant was drawing the clams he was shucking from a box or burlap bag that was on the floor beside the employee and that no ice surrounded those clams. *Id.* at 511(b). As to the period of time for which the clams had been sitting there unrefrigerated, the plaintiff can offer no definitive evidence. Plaintiff did, however, state that the clams had been there without refrigeration for the apparently short period of time since he had arrived. *Id.* at 507(b)–10(b), 556(b).

Another patron who was present in the Rusty Rudder from some time shortly after plaintiff received his clams also averred that the clams which were being shucked and placed on the raw bar were being drawn from bags near the bar which were not refrigerated. The patron stated that for the approximately one hour time period during which he was present in the restaurant, the clams remained unrefrigerated. *Id.* at 758(b)–59(b).

These facts are sufficient to raise an inference that the Rusty Rudder breached its duty by failing to maintain the clams plaintiff ingested at or below approximately forty-five degrees continuously until the point plaintiff received them. The Rusty Rudder's motion for summary judgment on plaintiff's claim of negligence cannot be denied based on plaintiff's inability to demonstrate defendant's breach of duty.

### 3. *Causation*

Plaintiff and defendant hotly contest causation. Plaintiff asserts defendant's allegedly negligent handling of the clams was the cause of his illness. Defendant contends plaintiff's injury was caused by the cirrhotic condition of plaintiff's liver.

Plaintiff notes that Delaware follows a "but for" or sine qua non rule of causation. Under this rule, " 'The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event, if the event would have occurred without it.' " *Culver v. Bennett,* 588 A.2d 1094, 1097 (Del.1991) (quoting W. Page Keeton et al., Prosser and Keeton on the

Law of Torts § 41 at 266 (5th ed. 1984)). According to plaintiff, causation may be demonstrated because plaintiff's illness would not have occurred if he had not ingested improperly handled clams at the Rusty Rudder buffet. In support, he cites the testimony of defendant's expert Dr. Morris who testified that plaintiff was suffering from vibrio septicemia when he was admitted to the hospital and that he knows of no explanation for that condition other than plaintiff's ingestion of clams at the Rusty Rudder. D.I. 13 at 148(b)–49(b).

Defendant contends ingestion of the clams supplied and sold by it was not the "cause" of plaintiff's illness. It asserts the true cause of his septicemia was the cirrhotic condition of his liver. In 1988 plaintiff was diagnosed with Laennec's Cirrhosis, a condition so acute that his estimated rate of survival for the next twelve months was less than fifty percent. D.I. 61 Ex. E at 7–10. The only evidence in the record as to the interrelationship between a human being's prior existing physical condition and the effect of vibrio vulnificus exposure was given by defendant's expert Dr. Morris. He testified that in otherwise healthy individuals, there is some evidence to show vibrio vulnificus might cause mild discomfort such as diarrhea, although this is controversial. D.I. 72 at 128b–29b. He also testified:

> The only people who appear to be at risk for developing severe infections due to vibrio vulnificus are people with underlying cirrhosis or alcoholic liver disease, or in some instances people who are immunosuppressed because of cancer chemotherapy or AIDS. If your immune system is functioning normally and you're not a chronic alcoholic then it appears that you can eat oysters containing vibrio vulnificus with great abandon and nothing will happen. If you are within these risk groups than [sic] there is a risk that by eating the oyster the organism will be able to invade, get into, invade your intestinal tract and get into your bloodstream and cause sepsis or a bloodstream infection.

D.I. 72 at 126b.

■ Plaintiff asserts the contrary proposition, i.e., that "healthy people occasionally develop sepsis as a result of ingesting the pathogen." D.I. 71 at 22. Plaintiff has no support in the record for this assertion. He attempts to rely on a table contained in a scientific report he contends defendant's expert Dr. Morris cited as authoritative. Examination of the record, however, shows Dr. Morris did not cite the study as authoritative. The table is hearsay and cannot be considered by the Court. Fed.R.Evid. 802. The facts, therefore, support defendant's assertion.

Although the facts in the record seem to favor defendant, i.e., showing that absent liver cirrhosis or suppression of the immune system a person will not suffer sepsis from exposure to vibrio vulnificus, defendant makes no legal argument based on this fact. Absent some indication of *why* such fact negates plaintiff's ability to prove proximate cause, defendant's argument must fail. As with the issue of duty, summary judgment will not be entered in favor of the Rusty Rudder on the issue of causation.

### B. BREACH OF IMPLIED WARRANTY

Plaintiff's complaint also alleges both defendants breached the implied warranty of merchantability by selling to plaintiff the clams which made him ill. Both defendants request summary judgment against plaintiff on this claim. In addition, Copp's also requests summary judgment be entered against third party plaintiff the Rusty Rudder on its claim for indemnity on the issue of the implied warranty of merchantability.

#### 1. *Defendants' Request for Summary Judgment against Plaintiff*

Plaintiff's claim against defendants for breach of the implied warranty of merchantability stems from Delaware's Commercial Code. Del.Code Ann. tit. 6 § 2–314 (1974). That statute states in pertinent part:

> (1) Unless excluded or modified (Section 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or

drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as ...

(c) are fit for the ordinary purposes for which such goods are used....

Del.Code Ann. tit. 6 § 2–314 (1974).

Plaintiff proceeds on two theories under this statute. In an argument that reflects his negligence theory, plaintiff proceeds only against defendant the Rusty Rudder. He asserts the Rusty Rudder mishandled the clams eventually sold to plaintiff by failing to maintain them at or below forty-five degree temperatures at all times thereby increasing the risk posed by any vibrio vulnificus the clams contained. The fact that the clams posed an increased risk of illness from the bacteria because of the mishandling, contends plaintiff, made them "unmerchantable" within the meaning of the statute. Plaintiff proceeds on a second theory of breach of warranty against both defendants. Under this theory he asserts the clams he ingested were unmerchantable simply by virtue of the fact that they contained any vibrio vulnificus, regardless of the fact that its presence was in no way caused by human harvesting and subsequent actions.

### a. Defining the Applicable Test

■ In order to determine the viability of plaintiff's claim, the Court must determine the proper standard in assessing whether a food product is fit for the ordinary purposes for which such food is sold, i.e., the product's "merchantability." The parties differ over what test should be used. Defendant urges application of the "foreign-natural" test un-

der which the food is said to be unfit for the ordinary purposes for which it is sold if an object found in the food does not occur naturally in that food. *Webster v. Blue Ship Tea Room*, 347 Mass. 421, 198 N.E.2d 309 (1964). Plaintiff suggests the "reasonable expectation" test is more appropriate. This test looks to whether a consumer should reasonably expect to encounter the deleterious substance when ingesting the food product. *Hatteras Island Gallery Restaurant, Inc. v. Willie R. Etheridge Seafood Co., Inc.*, 109 N.C.App. 314, 427 S.E.2d 131, *review denied*, 333 N.C. 792, 431 S.E.2d 27 (1993).

The Delaware Supreme Court has not indicated which test it prefers, nor have any lower courts provided guidance.[4] In addition, a survey of case law from other jurisdictions shows that the decisions are split. According to the Louisiana Court of Appeal, a majority of the jurisdictions follow the foreign-natural test. *Musso v. Picadilly Cafeterias, Inc.*, 178 So.2d 421, 427 (La.Ct.App.), *application denied*, 248 La. 468, 469, 179 So.2d 641 (1965). In the more recent case of *Yong v. Marriott Corp.*, 656 F.Supp. 445, 448 (D.Md.1987), the court stated that the " 'reasonable expectation' test has largely displaced the natural/foreign test...." The Court, therefore, looks anew at the alternatives to determine which test the Delaware Supreme Court would likely adopt. *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 230 (3d Cir.1992). The Court predicts the Delaware Supreme Court will adopt the reasonable expectation test.

The long standing rule has been that liability will result if a consumer is injured by the presence of a "foreign" object in a food product but where the food product contains some

---

**4.** Plaintiff asserts the Delaware Superior Court indicated its preference for the reasonable expectation test in *Trabaudo v. Kenton Ruritan Club, Inc.*, 517 A.2d 706 (Del.Super.Ct.1986). There the plaintiff had purchased sausage from the Ruritan Club which when eaten caused trichinosis. The court granted summary judgment against the plaintiff on his claim that the sausage was not fit for its ordinary and intended purpose. The court gave no reasoning for its decision stating only, "There is no indication here that the pork was unfit for cooking or that it was 'unreasonably dangerous' as that term is used at Restatement (Second) of Torts § 402(a), comment (i) (1965)." Perhaps the reason the court found

the sausage was not unfit for its ordinary purpose was because it is generally known that trichinosis may result if pork products are consumed without thorough cooking, i.e., invoking the principles of the reasonable expectation test. On the other hand, the court's determination that the pork was fit could have been predicated on the fact that trichinae are not "foreign" to pork products, i.e., invoking the principles of the foreign-natural test. Unfortunately, the standard applied by the court is not evident from the language of its opinion. Plaintiff's assertion that the Superior Court has adopted the reasonable expectation test is unconvincing.

element indigenous to that kind of food, it will not be labeled "adulterated" or unfit for human consumption. The court in *Mix v. Ingersoll Candy Co.*, 6 Cal.2d 674, 59 P.2d 144 (1936), held that no liability would lie for the presence of chicken bone in a chicken pie. It determined that chicken pies sometimes contained chicken bones and that requiring restauranteurs to prepare a perfect chicken pie would be too onerous a burden. *Id.*, 59 P.2d at 148. *See also Goodwin v. Country Club of Peoria*, 323 Ill.App. 1, 54 N.E.2d 612 (1944) (bone in poultry dish); *Silva v. F.W. Woolworth Co.*, 28 Cal.App.2d 649, 83 P.2d 76 (1938) (turkey bone in dressing of special turkey plate); *Goetten v. Owl Drug Co.*, 6 Cal.2d 683, 59 P.2d 142 (1936) (glass in chow mein). This test was recommended by the apparent logic that the presence of foreign substances in food products, such as glass, metal, etc., should result in liability if a consumer is injured thereby. Similarly, it precluded too heavy a burden from falling on a seller's shoulders under circumstances where it appeared reasonable for the injurious object, such as fish bones, nut shells, etc., to be present. In addition, the test has the obvious advantage of easy applicability.

More recent cases have criticized the foreign-natural test favoring instead the reasonable expectations test. The Court agrees with these more recent opinions. The problem with the foreign-natural distinction is that there is no truly logical basis for treating the two classes of injurious substances differently. As one commentator has noted, "The distinction makes bad sense. It makes even worse law. If the *Mix–Goetten* court were taken seriously, one is confronted by the ludicrous spectacle of the chef in the local hashhouse carefully culling the chicken chow mein to remove any ground glass, tacks or other debris he might encounter while disdainfully ignoring the serrated chicken bones therein on the assumption that the *Mix* decision immunizes him from liability." Mitchel J. Ezer, The Impact of the Uniform Commercial Code on the California Law of Sales Warranties, 8 UCLA L.Rev. 281, 304 (1961).

The distinction is also somewhat artificial from a practical perspective. A small, but unforgiving, pearl from an oyster can cause as much damage as a "foreign" piece of metal when a consumer bites down on it. *O'Dell v. DeJean's Packing Co.*, 585 P.2d 399, 402 (Ok.Ct.App.1978). *See also Zabner v. Howard Johnson's, Inc.*, 201 So.2d 824, 826 (Fla. Ct.App.1967) ("A nutshell natural to nut meat can cause as much harm as a foreign substance, such as a pebble, piece of wire or glass."). Furthermore, as the Alabama Supreme Court recognized in *Ex Parte Morrison's Cafeteria, Inc. v. Haddox*, 431 So.2d 975, 978 (Ala.1983):

> The undesirability of the foreign substance test lies in the artificial application at the initial stage of processing the food without consideration of the expectations of the consumer in the final product served. Surely it is within the expectation of the consumer to find a bone in a T-bone steak. But just as certainly it is reasonable for a consumer not to expect to find a bone in a package of hamburger meat.

The reality is that today's marketplace is one of consumerism. In this day and age, the foreign-natural test is an outdated relic. Many products are purchased in a form that has already been processed in some way. The test's weakness stems from the fact that it focuses on the product in its natural or preprocessed form, not on the form purchased by the consumer, the form which results in injury. "Such reasoning assumes all substances which are natural to the food are anticipated to possibly be in the food ultimately purchased in processed form." *O'Dell*, 585 P.2d at 402. As the Illinois Supreme Court stated in *Jackson v. Nestle–Beich, Inc.*, 147 Ill.2d 408, 168 Ill.Dec. 147, 151, 589 N.E.2d 547, 551 (1992):

> "In an era of consumerism, the foreign-natural standard is an anachronism. It flatly and unjustifiably protects food processors and sellers from liability even when the technology may be readily available to remove injurious natural objects from foods. The consumer expectation test, on the other hand, imposes no greater burden upon processors or sellers than to guarantee that their food products meet the standards of safety that consumers customarily and reasonably have come to expect from the food industry."

*Id.* quoting Note, Products Liability—The Test of Consumer Expectation for "Natural" Defects in Food Products, 37 Ohio St.L.J. 634, 651–52 (1976).

The Court adopts the reasoning of the foregoing jurisdictions and holds that the Delaware Supreme Court would apply the reasonable expectation test in deciding if a food product was fit for consumption.

#### b. Applying the Reasonable Expectation Test

■ Having determined which test should be applied in analyzing whether defendants breached the implied warranty of merchantability, the Court now considers whether summary judgment may be awarded to either defendant on the basis that they did not breach the implied warranty. Plaintiff contends the Rusty Rudder sold unmerchantable clams because such clams contained elevated bacteria levels as a result of mishandling by the Rusty Rudder. As a second theory of breach, plaintiff asserts the clams were unmerchantable simply by virtue of the fact that they contained vibrio vulnificus regardless of the fact that the bacteria's presence may have been in no way caused by human harvesting and subsequent actions.[5] Plaintiff pursues both defendants under this second theory.

■ The Court considers plaintiff's second theory first. Defendants contend plaintiff cannot meet his burden of proving the clams ingested by him were unmerchantable by reason of the mere presence of vibrio vulnificus. The question therefore becomes whether consumers can reasonably expect raw clams to be free of vibrio vulnificus in levels that may cause illness. The Court holds that they may not.

One factor in determining what a consumer should reasonably expect is the "naturalness" of the injury causing agent. *Cain v. Sheraton Perimeter Park South Hotel,* 592 So.2d 218, 221 (Ala.1991); *Zabner,* 201 So.2d at 826. Under the circumstances of the instant case, it is an important factor. All parties agree the only testimony in this case is that vibrio vulnificus is a naturally occurring bacteria in the waters off North America and that it is taken in by filter feeding organisms such as clams. D.I. 61 Ex. G at 9–11. From this uncontroverted evidence the Court concludes vibrio vulnificus is natural to clams.

A second factor important to the determination of what a consumer should reasonably expect is the amount of processing the food product has undergone. *See Ex Parte Morrison's Cafeteria, Inc. v. Haddox,* 431 So.2d 975, 978 (Ala.1983). Here, the food has undergone no processing. The food the plaintiff ingested was exactly the way it occurs "in the wild." A consumer, by seeking to eat the clams raw, wishes the clams to be such. Thus a consumer should expect substances that are indigenous to the organism in its natural state to be present when he or she receives it. Although the question of whether a consumer should reasonably expect to find the injurious element in the food product purchased will often be a question for the jury, the Court finds under the facts of this case, a consumer could not reasonably expect to receive a clam free of potentially injurious bacteria. *See Cain,* 592 So.2d at 221. The Court's conclusion is further bolstered by the testimony of plaintiff's expert who testified that the general public is aware that there are health risks inherent in eating raw shellfish. D.I. 67 at F–3.[6] *See Simeon v. Doe,*

---

5. It is true that negligence is not an element of a cause of action for breach of the implied warranty of merchantability. *See Cline v. Prowler Indus. of Md., Inc.,* 418 A.2d 968, 973 (Del.1980) (basic concepts and development of commercial code parallel those of strict liability); *Freedman v. Chrysler Corp.,* 564 A.2d 691, 697 (Del.Super.Ct.1989) (elements for claim of breach of implied warranty of merchantability are (1) goods sold by merchant; (2) goods not merchantable at time of sale; (3) plaintiff suffers injury; (4) plaintiff's injury resulted from failure of goods to be merchantable; and (5) seller had notice of the injury).

6. Plaintiff's assertion that the record reveals the medical community, the food handling personnel at the Rusty Rudder and Department of Health personnel were unfamiliar with the health risks posed by vibrio vulnificus does not detract from this finding. The inquiry is not whether a consumer should reasonably expect to suffer from exposure to a particular bacteria, i.e., vibrio vulnificus, but whether he or she should reasonably

602 So.2d 77 (La.App.1992), *aff'd in part, vacated in part,* 618 So.2d 848 (La.1993) (oysters containing vibrio vulnificus not unmerchantable under foreign-natural test since bacteria are natural to the shellfish).

The Court finds a consumer cannot reasonably expect raw clams eaten by him or her to be free of potentially injurious bacteria. Plaintiff's first theory as to breach of the implied warranty of merchantability must fail. As plaintiff pursues Copp's on this theory only, summary judgment on this claim will be awarded in favor of Copp's.

Plaintiff's second theory of breach of the warranty applies only to the Rusty Rudder. He asserts the clams sold to him by the Rusty Rudder were unmerchantable because its failure to keep the claims at or below forty-five degrees fahrenheit increased the risk of illness beyond that which a consumer would reasonably expect. While the Court has held a consumer should reasonably expect a raw clam to pose some health risk, it cannot hold as a matter of law that such expectation extends to elevated risk levels engendered by the alleged negligence of the Rusty Rudder. This is a question for the jury. Summary judgment will not be awarded to the Rusty Rudder on plaintiff's claim for breach of the implied warranty of merchantability.

### 2. *Copp's Request for Summary Judgment against the Rusty Rudder*

Finally, the Court addresses Copp's request for summary judgment against the Rusty Rudder on the restaurant's claim that Copp's must indemnify it if it is held liable to plaintiff for breach of the implied warranty of merchantability. The Rusty Rudder clarified its claim at oral argument stating that it seeks indemnity only if the Rusty Rudder is found to have breached the implied warranty by the mere fact that it sold clams containing some amount of vibrio vulnificus (plaintiff's first theory of breach).

The Rusty Rudder does not seek indemnification if it is found to have sold clams rendered unmerchantable due to some negli-

gence on the part of the restaurant and the Court, limiting its holding to plaintiff's theories, has held the Rusty Rudder cannot be liable to plaintiff for breach of the implied warranty of merchantability absent some negligence. It therefore follows there is no basis on which Copp's could be required to indemnify the Rusty Rudder. Copp's motion for summary judgment against the Rusty Rudder will be granted.

## V. *CONCLUSION*

Plaintiff's claim for negligence against Copp's will be dismissed with prejudice. Copp's motion for summary judgment against plaintiff on the issue of breach of the implied warranty of merchantability will be granted. Copp's motion for summary judgment against the Rusty Rudder on the issue of indemnity for any breach of the implied warranty or negligence the Rusty Rudder may be found to have committed will also be granted. This effectively removes Copp's as a party to the litigation.

Defendant Rusty Rudder's motion for summary judgment against plaintiff on the issue of negligence will be denied. The Rusty Rudder's motion for summary judgment against plaintiff on the issue of breach of the implied warranty of merchantability will be granted insofar as it is predicated upon plaintiff's theory that any clams containing vibrio vulnificus are not merchantable but will be denied as to plaintiff's theory that the Rusty Rudder because of improper handling sold clams with an elevated level of the same bacteria.

expect the intrinsic nature of clams in their raw, natural state to pose some risk of illness.