FOUKE & REYNOLDS, D. B. A. REYNOLDS FISHERIES, APPELLEES,
*v.* GREAT LAKES TERMINAL WAREHOUSE CO. ET AL.,
APPELLANTS.

[Cite as Fouke & Reynolds v. Great Lakes Co.
(1972), 33 Ohio App. 2d 273.]

(Nos. 7182, 7183—Decided April 18, 1972.)

*Mr. Joseph L. Newman* and *Mr. Sheldon Rosen*, for
appellees.

*Mr. William J. Brown*, attorney general, and *Mr. Robert M. Weinberger*, for appellant director of Ohio department of agriculture.

BROWN, J. This is an appeal from an order of the Court of Common Pleas of Lucas County in two companion cases involving fish belonging to plaintiffs, appellees herein, embargoed by defendant Gene R. Abercrombie, the director of the department of agriculture and an appellant herein, pursuant to R. C. 3715.55. The trial court found the fish described in the complaint not to be "adulterated" and not subject to condemnation under the pro-

visions of R. C. 3715.55, et seq. It ordered the fish released to plaintiffs.

Defendant director of agriculture claimed the fish to be adulterated within the meaning of R. C. 3715.55 and 3715.59.*

Samples of the fish tested for mercury content levels, in May 1971, exhibited mercury levels in six separate lots ranging from .69 to 1.5 parts per million. Dr. Kolbye, a physician and expert in public health, from the bureau of foods, United States Department of Health, Education and Welfare, construing his testimony most favorable to defendant, in substance, testified that fish containing levels of mercury above .5 parts per million are a danger to health.

The trial judge who decided this case filed a memorandum opinion in which he made a thorough and excellent analysis of the facts adduced and the law applicable thereto. Although the trial judge pointed out that there was no proof that the fish contained any poisonous or deleterious substance which could render the fish injurious to health, there was some evidence relating thereto. However, we do find that the trial court did not err in finding that the defendant director did not sustain his burden of proof.

---

*The pertinent part of R. C. 3715.55 provides: "(A) Whenever the director of agriculture * * * has cause to believe, that any food * * * is adulterated * * * as to be dangerous * * * within the meaning of Sections 3715.01 and 3715.52, inclusive of the Revised Code, he shall affix to such article a tag or other appropriate marking, giving notice that such article is, or is suspected of being, adulterated * * * and has been detained or embargoed * * *.

"(B) When an article detained or embargoed has been found by the director * * * to be adulterated * * * he shall petition the municipal or county court in whose jurisdiction the article is detained or embargoed for an order for condemnation of such article * * *."

The pertinent part of R. C. 3715.59 provides: "Food is adulterated within the meanings of Sections 3715.01 and 3715.52 to 3715.72, inclusive, of the Revised Code, if:

"(A) It bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance, such food shall not be considered adulterated if the quantity of such substance in such food does not ordinarily render it injurious to health * * *."

The trial judge granted the relief sought by plaintiffs in their complaints—possession of the fish—and dismissed the counterclaim of defendant Gene Abercrombie which sought destruction of the fish. We affirm.

Much evidence was adduced concerning the interim guideline of the food and drug administration of the Department of Health, Education and Welfare, which provides that .5 parts per million of mercury in fish may be harmful, and its significance and importance, and establishing that the Ohio department of agriculture was following this guideline concerning the sale and distribution of commercial fish.

Dr. Kolbye, the defendants' chief expert and main witness, could cite no report or record of any person being injured or harmed in the United States from eating fish containing mercury at any level, not even in 1970 when fish taken from Lake St. Clair and the St. Clair River were found contaminated with mercury in excess of .5 parts per million. The mercury poisoning of inhabitants of Minamata Bay, Japan, eating raw fish several times a day, every day of the week, is an episode so dissimilar factually that it is inapposite to the present case and should be disregarded.

The mercury found in the fish in these two cases is not an "added substance" to the fish, within the meaning of R. C. 3715.59(A), because it comes as a substance natural to the fish. *Allen* v. *Grafton,* 170 Ohio St. 249, paragraph 4 of the syllabus, and the dissenting opinion, at page 261.

When a substance such as mercury is not an "added substance," then as a consequence of the language in R. C. 3715.59, the director of agriculture must prove by a preponderance of the evidence that the quantity of mercury in such fish "ordinarily renders it injurious to health."

The defendant director has failed to sustain this burden of proof. Therefore, the trial judge was eminently correct in the judgment rendered.

It might further be observed that there is neither a state statute nor a rule or regulation of any state agency which sets a standard that mercury, per se, in fish causes it to be adulterated within the meaning of R. C. 3715.55 et seq.

However, pursuant to R. C. 3715.58, the director of agriculture has lawful power to promulgate regulations fixing and establishing for fish or any other food a reasonable definition and standard of quality, and that would include regulations pertaining to mercury content. This procedure, the director of agriculture did not choose to follow.

Under R. C. 3715.58, rules and regulations must be adopted strictly in accordance with R. C. chapter 119, the administrative procedure act, which provides, in detail, for public notice of a hearing concerning the adoption of a rule; for reasonable efforts toward informing those affected by such hearing (R. C. 119.03); and for an appeal from the adoption of any rule by a party adversely affected to the Court of Common Pleas of Franklin County (R. C. 119.11), to determine that such regulation is reasonable and neither arbitrary nor discriminatory. (*Weber* v. *Board of Health,* 148 Ohio St. 389; 1 Ohio Jurisprudence 2d 482, Admin. Law and Proc., Section 80.) This route would also afford the plaintiffs protection for their interests through judicial review.

If the route of rule-making procedure, pursuant to R. C. 3715.58, had been traveled by the director of agriculture, subject to review by the courts as provided by law, all parties would have certain and, therefore, better guidelines and standards to follow; then, more stability would be restored to the commercial fishing industry.

For the reasons discussed, the judgment of the Court of Common Pleas of Lucas County is affirmed.

*Judgment affirmed.*

POTTER, P. J., and WILEY, J., concur.