UNITED STATES of America,
Plaintiff,

v.

AN ARTICLE OF FOOD CONSISTING
OF CARTONS OF SWORDFISH,
Defendant.

UNITED STATES of America,
Plaintiff,

v.

ARTICLE OF FOOD CONSISTING OF
VARIOUS QUANTITIES OF
SWORDFISH, Defendant.

UNITED STATES of America,
Plaintiff,

v.

AN ARTICLE OF FOOD . . . LA-
BELED IN PART "ERIC FROZEN
SWORDFISH CHUNKS", Defendant.

Nos. 71 Civ. 3031, 71 Civ. 3034, and
71 Civ. 3035.

United States District Court,
S. D. New York.

June 3, 1975.

Taggart Adams, Asst. U. S. Atty., New York City, for the United States.

Berman & Klein, New York City, for defendants.

### MEMORANDUM

STEWART, District Judge:

Plaintiff has moved for summary judgment in each of the above three *in rem* actions which were instituted pursuant to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* The defendants are dead swordfish. Each action is substantially the same except for the identity of the defendant and each will be treated similarly for purposes of this motion.

The government alleges that the swordfish in question are adulterated within the meaning of 21 U.S.C. § 342(a)(1)[1] in that they contain mercury, an "added substance" which is "poisonous or deleterious . . . [and] may render [them] injurious to health." The government seeks condemnation un-

der 21 U.S.C. § 334.[2] After the swordfish had been duly seized by the United States Marshal on July 8, 1971, claimant C. G. Wadman & Co., Inc. intervened and filed claims to the seized swordfish. The claimant is no longer seeking recovery of the swordfish which, under the rules of the industry, are no longer of value, having remained for more than three years under government attachment in a public warehouse. Claimant instead seeks compensation for its swordfish.

The swordfish were shipped from Japan to the United States in 1969 and 1970 in various lots. In January and February of 1971 agents of the Food and Drug Administration ("FDA") took samples of the claimant's swordfish pursuant to 21 U.S.C. § 372 to analyze them for mercury content. In July, 1969, the FDA established an Administrative Guideline of 0.5 ppm mercury in fish as the standard at which the agency will charge that the fish is adulterated. . . ." (Klein Aff. on Behalf of Claimant, Ex. 1). It is undisputed that each sample was found to contain mercury in excess of 0.5 ppm (parts per million) and that five of these lots showed mercury in excess of 1.00 ppm. Thereafter, the FDA recommended the institution of forfeiture suits to condemn the swordfish which are the subject of these three actions.

■ Under 21 U.S.C. § 342(a)(1), a food is adulterated if it contains a poisonous and deleterious substance which *may* render it injurious to health. The Supreme Court has held that if there is any possibility that the food will be injurious, then it may be condemned under this section. *United States v. Lexington Mill & Elevator Co.*, 232 U.S. 399, 411,

---

1. 21 U.S.C. § 342(a)(1) states: A food shall be deemed to be adulterated—(a)(1) [i]f it bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance such food shall not be considered adulterated under this clause if the quantity of such substance in such food does not ordinarily render it injurious to health . . . ."

2. 21 U.S.C. § 334 provides in pertinent part: "Any article of food . . . that is adulterated . . . when introduced into or while in interstate commerce or while held for sale . . . after shipment in interstate commerce . . . shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned in any district court of the United States . . . ."

34 S.Ct. 337, 58 L.Ed. 658 (1914). According to uncontradicted affidavits submitted by the government in support of this motion, mercury is an extremely poisonous substance in man and consumption of fish at a level whereby the acceptable daily intake for mercury exceeds the levels set forth in the FDA Guidelines constitutes "an unwarranted medical risk of injury which should be avoided." (Kurland affidavit in support of plaintiff's motion, p. 2).

■ Claimant, arguing that 0.5 ppm mercury does not render fish injurious to health, relies almost exclusively on articles which have appeared in the Harvard Law Review, the New York Times, the Daily News, and a medical publication, none of which appear to have been based upon personal knowledge of any of the matters here in dispute and, of course, none of them are sworn. This is insufficient to raise an issue which would defeat summary judgment under Rule 56(e).

■ The government also contends that mercury in swordfish is an added substance within the meaning of 21 U. S.C. § 342(a)(1). Under that section, a food containing an added poisonous or deleterious substance is adulterated if it may be injurious to health. According to the government, the test for determining whether a substance is added is whether it occurs naturally in the food. Under this test, for example, oxalic acid in rhubarb would not be considered an added substance. See Hearings Before the House Committee in Interstate and Foreign Commerce, on S. 5, 74th Cong., July 22, 1935, reported in Dunn, *Federal Food, Drug, and Cosmetic Act,* at 1250 (1938). Similarly, the government reasons, mercury is not naturally produced by fish, but is acquired through its external food supply. See Windom Aff., at 2.

We agree with the government's position on this point. We find unpersuasive claimant's argument that mercury could not be an added substance because it has been found in fish for centuries. Assuming this to be so, it adds nothing to the question of whether mercury is naturally produced by fish and thus whether it is an added substance within the meaning of the statute. We also find unpersuasive claimant's citation of *Fouke & Reynolds v. Great Lakes Terminal,* (Ohio Court of Common Pleas, 1972(?)), aff'd, 33 Ohio App.2d 273, 294 N.E.2d 245 (1972), since the Ohio courts did not have before them the instructive affidavits of Herbert L. Windom and Oiva I. Joensuu, which describe why mercury should be considered an "added substance."

■ The claimant asserts as a counterclaim that it is entitled to damages totaling $18,435.22 on the ground that the government's seizure of defendants' swordfish was an unlawful seizure of property without just compensation in violation of the fifth amendment and a violation of the Constitutional prohibition against ex post facto laws. This counterclaim must fall, since no action or counterclaim may be brought against the United States without specific statutory consent. *United States v. Shaw,* 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940); *United States v. Ein Chem. Corp.,* 161 F.Supp. 238 (S.D.N.Y.1958); *see also* 6 Wright & Miller, *Federal Practice & Procedure,* ¶ 1427 (1971). No specific statute authorizes a counterclaim here against the government.

Since the counterclaim is not authorized by statute, we need not decide whether the virtual forfeiture imposed on the claimant, which was concededly without any intention to violate the law, constitutes a taking of property without just compensation.[3]

---

3. Such a claim would probably fail on the basis of the Supreme Court's recent holding in *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680–90, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), *reh. denied,* 417 U.S. 977.

In that case, the Court held that a forfeiture imposed on an innocent party did not deprive him of property without just compensation.

■■ Finally, we note that the seizure of defendants' swordfish was not a violation of the constitutional prohibition against ex post facto laws, U.S. Const., Art. 1, § 9, cl. 3, since that prohibition relates only to criminal penalties or civil disabilities which are really criminal penalties in disguise. *Harisiades v. Shaughnessy,* 342 U.S. 580, 594–95, 72 S.Ct. 512, 96 L.Ed. 586 (1952), *reh. denied,* 343 U.S. 936, 72 S. Ct. 767, 96 L.Ed. 1344 (1952). The statutes involved in the instant case are regulatory and not penal in nature, and, hence, the ex post facto prohibition does not apply.

For the above stated reasons, plaintiff's motion for summary judgment in all three cases is granted. The defendant swordfish shall be forfeited to the United States and thereafter destroyed.

So ordered.