Ernest Dale EDWARDS and Shirley Edwards, Appellants,

v.

HOP SIN, INC., Appellee.

No. 2002–CA–001482–MR.

Court of Appeals of Kentucky.

Aug. 29, 2003.

As Modified Sept. 19, 2003.

Discretionary Review Denied Aug. 18, 2004.

---

7. *Aulick v. Summers,* 186 Ky. 810, 217 S.W. 1024, 1025 (1920); *Walton v. Lee,* Ky., 634 S.W.2d 159 (1982).

8. *McKee v. Johnson,* Ky. 312 S.W.2d 902, 903 (1958).

Freeda M. Clark, Louisville, KY, for Appellants.

Marvin L. Coan, Hummel & Coan, Louisville, KY, for Appellee.

Before BARBER, COMBS, and KNOPF, Judges.

## OPINION

KNOPF, Judge.

In November 1998, Ernest Edwards ate raw oysters from the seafood bar at China Town restaurant on the Outer Loop in Louisville. By the next day he had become ill with what proved to be septicemia, a bacterial invasion of his blood stream. The bacterium was Vibrio vulnificus, an organism naturally occurring in sea water and commonly found in oysters and other marine filter feeders. In May 1999 Edwards and his wife brought suit against the owner of the restaurant, Hop Sin, Inc.[1] They alleged that China Town's raw oysters were the source of Ernest's infection and that the illness had worsened his already bad liver condition and had caused chronic swelling of his lower right leg and foot. By order entered May 16, 2002, the Jefferson Circuit Court granted Hop Sin's motion for summary judgment. The court ruled that even if the bacterium was present it did not render the oysters "defective" for products liability purposes and further ruled that the owner had not breached a duty to warn Ernest about the health risks posed by raw oysters. We believe that the warning issue presents a jury question.

Summary judgment is inappropriate, of course, unless the movant demonstrates that on a dispositive aspect of the case there is no genuine issue of material fact.[2] Both the trial court and this Court assess such motions, not by weighing the evidence, but by reviewing the record in the light most favorable to the opposing party.[3]

■ It is well settled that one selling or distributing a defective product may be liable for harm resulting from the defect.[4] In general, a product is defective if it "does not meet the reasonable expectations of the ordinary consumer as to its safety.... [T]his amounts to saying that if the seller knew of the condition he would be negligent in marketing the product."[5]

■ Courts have distinguished three types of product defect: (1) manufacturing defects or deviations from the product's design that create unreasonable risks of harm; (2) design defects or unreasonable risks of harm inherent in the product's design; and (3) warning defects or unreasonable risks of harm that could have been reduced or avoided by the provision of reasonable instructions or warnings.[6]

1. The complaint originally sought relief from United China, Inc., but a subsequent amendment named Hop Sin, Inc., as the defendant.

2. *Steelvest, Inc. v. Scansteel Service Center,* Ky., 807 S.W.2d 476 (1991).

3. *Id.*

4. *Montgomery Elevator Company v. McCullough,* Ky., 676 S.W.2d 776 (1984); *Ulrich v. Kasco Abrasives Company,* Ky., 532 S.W.2d

197 (1976). *Restatement Third, Torts: Products Liability* § 1 (1998).

5. *Ulrich v. Kasco Abrasives Company,* 532 S.W.2d at 200 (citing *Jones v. Hutchinson Manufacturing, Inc.,* Ky., 502 S.W.2d 66 (1973); internal quotation marks omitted).

6. *Ulrich v. Kasco Abrasives Company, supra; Post v. American Cleaning Equipment Corporation,* Ky., 437 S.W.2d 516 (1968); *Restate-*

■ We agree with the trial court that the presence of Vibrio bacteria in raw oysters does not constitute either a manufacturing or a design defect.[7] The record indicates that there are no reasonably available alternatives to bacteria-laced oysters. The bacterial presence occurs naturally under commonly occurring conditions and screening is not feasible because current methods of testing for the bacterium destroy the oyster. Furthermore, the bacterium poses little threat of harm to healthy persons. According to a Food-and-Drug-Administration fact sheet included in the record, there were only about one thousand reports of Vibrio infection nationwide for the reporting year 1997–98.[8] We agree with the trial court that, Vibrio notwithstanding, it is not per se unreasonable to market raw oysters.

■ We are not willing to say, however, that, as a matter of law, the restaurant could market raw oysters without warning of the bacterial risk. In general, a manufacturer must warn of latent risks that reasonably foreseeable "users and consumers would reasonably deem material or significant in deciding whether to use or consume the product."[9] This does not mean that manufacturers must warn against every conceivable risk. There is no duty to warn against obvious risks.[10] A reasonable consumer, moreover, expects warnings only against latent risks that are substantial, those risks sufficiently likely and sufficiently serious to demand attention. The graver the risk, of course, the less likely it need be to be substantial. Here the record indicates that, although for healthy persons Vibrio poses little more than a slight risk of indigestion, for persons, such as Ernest, with stomach, liver, or blood conditions or with compromised immune systems, the bacterium poses a slight, but real, risk of serious illness or death.[11] Although a reasonable consumer is probably aware that raw seafood poses a certain risk of mild illness, the ordinary consumer was not in 1998 and probably still is not aware of this much graver risk. A reasonable consumer could expect to be warned. At least, we believe, a jury could find that in November 1998, knowledge of this grave risk was available to oyster producers and a reasonable producer would have deemed the risk substantial enough to warn against it.[12]

ment *Third, Torts: Products Liability* § 2 (1998).

7. The presence of an unusually large bacterial population could, of course, indicate mishandling of the food, but we are concerned here only with the sort of bacterial presence common to oysters in the wild.

8. See *Clime v. Dewey Beach Enterprises, Inc.*, 831 F.Supp. 341 (D.C.Del.1993); *Simeon v. Doe*, 618 So.2d 848 (La.1993).

9. *Restatement Third, Torts: Products Liability* § 2, comment i (1998).

10. *Post v. American Cleaning Equipment Corporation*, Ky., 437 S.W.2d 516 (1968); *Restatement Third, Torts: Products Liability* § 2, comment j (1998).

11. *Clime v. Dewey Beach Enterprises, Inc.*, *supra*; *Simeon v. Doe, supra*.

12. *Simeon v. Doe, supra* (deeming the risk substantial but remanding for consideration of whether knowledge of the risk existed in 1986). Several, if not all, of the Gulf states have enacted regulations that require oyster warnings. *See for example, Gregor v. Argenot Great Central Insurance Company*, 851 So.2d 959 (La.2003); Texas Administrative Code, 25 TAC § 229.164(r) (2003); Florida Administrative Code, 64D–3.013(7) (2003). *Also cf. Livingston v. Marie Callenders, Inc.*, 72 Cal. App.4th 830, 85 Cal.Rptr.2d 528 (1999) (discussing restaurant's duty to warn of latent allergen); *Brown v. McDonald's Corporation*, 101 Ohio App.3d 294, 655 N.E.2d 440 (1995) (discussing both manufacturer's and retailer's duty to warn of latent allergen).

█ Of course, as Hop Sin points out, the appellee in this case was the retailer, not the manufacturer, and KRS 411.340 limits the potential products liability of retailers. Under that statute, if the manufacturer is subject to the court's jurisdiction, and if the retailer sold the product in the same condition as it received it, then the retailer shall not be subject to products liability unless it "breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition unreasonably dangerous to the user or consumer." Prior to this statute, a retailer could be held strictly liable for a product rendered defective by a manufacturer's breach of a duty of care.[13]

For two reasons we believe that this statute does not bar the Edwardses' claim. First, we have held that a jury could find that raw oysters unaccompanied by a manufacturer's warning of the serious health risks to certain people were defective for products liability purposes. In fact, however, the oysters Ernest consumed arrived at the appellee's restaurant in a case with a tag reciting the following manufacturer's warning:

> There is a risk associated with consuming raw oysters or any raw animal protein. If you have chronic illness of the liver, stomach, blood or have immune disorders, you are at greater risk of serious illness from raw oysters. You may, however, eat your oysters fully cooked. If unsure of your risk you should consult your physician. Please share this information with your customers.

A jury could find, we believe, that by failing to pass along this warning, the restaurant altered the product and thereby forfeited the statutory immunity from the down-the-line sort of strict liability.[14]

Alternatively, a jury could find that the restaurant knew or should have known that absent a warning the oysters were defective—that they posed an unreasonable risk of harm to some persons—and so, under the statute, incurred its own duty to warn, the breach of which constituted negligence. The manufacturer's warning would serve as evidence of this knowledge. The Edwardses have alleged both theories. We believe that they are entitled to present these theories to a jury.

Accordingly, we reverse the May 16, 2002, summary judgment of the Jefferson Circuit Court and remand for additional proceedings consistent with this opinion.

ALL CONCUR.

---

13. *Ulrich v. Kasco Abrasives Company, supra.*

14. The other sort of strict liability is that imposed on manufacturers, no matter how careful, for manufacturing defects. The consensus seems to be that a manufacturer's liability for design and warning defects requires negligence. *Ulrich v. Kasco Abrasives Company, supra; Olson v. Prosoco, Inc.,* 522 N.W.2d 284 (Iowa 1994). *But see Carlin v. The Superior Court of Sutter County,* 13 Cal.4th 1104, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (1996).