900 So.2d 208 (2005)
Miguel VARGAS and Kimberly Vargas
v.
CONTINENTAL CUISINE, INC., d/b/a The Corner Oyster Bar & Grill.
No. 2004-CA-1029.
Court of Appeal of Louisiana, Fourth Circuit.
March 30, 2005.
Rehearing Denied April 29, 2005.
Kevin C. Schoenberger, Kevin C. Schoenberger, APLC, New Orleans, LA, for Plaintiff/Appellee.
*209 Craig R. Nelson, Nelson Fay, L.L.C., New Orleans, LA, for Appellant.
(Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY, III, Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
This matter arises from a suit filed by plaintiffs against several defendants, including the Department of Health and Hospitals (DHH) for injuries suffered by Miguel Vargas after eating raw oysters purchased from a Louisiana restaurant. After a trial on the merits, the trial court found DHH 100% at fault for Vargas' injuries. After review of the record, the applicable law, and briefs of the parties, we reverse the judgment of the trial court.

Relevant Facts
Manuel Vargas, a resident of the New Orleans area[1] since 1987, was diagnosed with severe liver failure secondary to alcohol abuse in March 2001. He was advised to stop drinking alcohol and not to eat raw foods. On July 14, 2001, after being admitted to the emergency room of the Medical Center of Louisiana at New Orleans (a/k/a Charity Hospital) complaining of pain in his leg, Vargas was diagnosed with an infection from bacteria vibrio vulnificus. After a two-week hospitalization with antibiotic therapy, Vargas recovered from the infection and was released.
On January 22, 2002, Miguel Vargas and Kimberley Vargas, filed suit against Continental Cuisine, Inc. d/b/a The Corner Oyster Bar & Grill (the restaurant), alleging that Vargas was a patron of the restaurant at 500 St. Peter Street in New Orleans on July 14, 2001[2], where he purchased and consumed raw oysters; that after becoming violently ill he was diagnosed[3] with vibrio vulnificus; that he was never warned of the dangers of eating raw oysters by any employee or posted warnings on the restaurant menu or wall; that Vargas developed medical complications as a result of the severe medical condition created by the vibrio vulnificus bacteria; and that he was presently hospitalized and not expected to survive. Plaintiffs alleged that the sole and proximate cause of the illness Vargas contracted from eating raw oysters and his present medical condition was the negligence of the restaurant.
In their first supplemental and amended petition for damages filed on April 11, 2002, plaintiffs added the Department of Health and Hospitals (DHH) of the State of Louisiana as a defendant, alleging that DHH was negligent in its enforcement of La.Rev.Stat. 23:006-4. In their second supplemental and amending petition filed on August 19, 2002, plaintiffs added the restaurant's general liability insurer, Can International Reinsurance Co. Ltd., and the purveyor of the oysters purchased by the restaurant, P. & J. Oyster Company, Inc. Miguel Vargas died on October 5, 2003, and on October 7, 2003, a third supplemental and amended petition was filed in which Kimberly Vargas amended her claim for loss of consortium to add claims for both survival and wrongful death and *210 Yolanda Vargas, guardian of the minor child, Elizabeth Angelia Vargas, asserted claims for both survival and wrongful death on behalf of Miguel Vargas' daughter. On December 2, 2003, the plaintiffs stipulated that Miguel Vargas died of cirrhosis of the liver and dismissed their wrongful death claims. On January 5, 2004, after the plaintiffs settled their claims with the restaurant, the restaurant was dismissed from the lawsuit.
This matter was tried without a jury on December 15 and 16, 2003. On February 4, 2004, the trial court rendered judgment in favor of plaintiffs for $55,000.00, finding defendant DHH 100% liable for Vargas' injuries. In her reasons for judgment, the trial found that (1) DHH failed to enforce the Sanitary Code and insure that the restaurant had sufficient warnings posted regarding the ingestion of raw oysters; (2) the warnings posted on the restaurant menu and at the bar were inadequate and insufficient because they stated only that "[t]here may be a risk associated with consuming raw shellfish"; and (3) Vargas did not contribute to his injuries by consuming the raw oysters because he was unaware of any hazard in consuming raw oysters. The trial judge held that (1) DHH's obligation under the sanitary code was to ensure that warnings posted were sufficient to warn persons such as the judge plaintiff (who suffered from liver disease) of the dangers of ingesting raw oysters; and (2) because of the insufficient and inadequate warning, the plaintiff spent approximately two weeks hospitalized, much of that time in intensive care. Accordingly, the trial judge awarded the plaintiffs $50,000.00 in general damages and Kimberly Vargas $5000.00 for her loss of consortium claim.
Both the defendant and the plaintiffs filed motions for a new trial. On April 14, 2004, the trial judge granted the plaintiff's motion for a new trial, awarding the plaintiff $31,517.11 in medical expenses, and denied defendant's motion for a new trial. In her reasons for judgment, the trial judge found that (1) DHH failed to present sufficient evidence at trial to support its allegations of third-party negligence on the part of Charity Hospital; and (2) DHH failed to provide sufficient evidence at trial that the restaurant was liable for the plaintiff's injuries. The trial judge "reiterate[d] that DHH has the mandatory obligation of enforcing the Sanitary code [sic] and insuring that every restaurant post sufficient warnings regarding ingestion of raw oysters, and the fact that they may be hazardous to one's health as enunciated by the Supreme Court in Gregor v. [Argenot Great Central Ins.Co., 02-1138 (La.5/20/03) 851 So.2d 959, reh'g denied (9/5/03)]."
On appeal, the defendant raises three assignments of error: (1) The trial court failed to find that the negligence of DHH was a "substantial factor" in causing the harm Vargas claimed to have suffered; (2) the trial court erred in failing to apportion fault to the restaurant and other third parties; and (3) the trial court erred in awarding $50,000 for Miguel Vargas' injuries and $31, 517.11 in medical expenses.

Discussion
The Louisiana Sanitary Code 23:006-4 provides in pertinent part:
All establishments that sell or serve raw oysters must display signs, menu notices, table tents, or other clearly visible messages at point of sale with the following wording:
THERE MAY BE A RISK ASSOCIATED WITH CONSUMING RAW SHELLFISH AS IS THE CASE WITH OTHER RAW PROTEIN PRODUCTS. IF YOU SUFFER FROM CHRONIC ILLNESS OF THE LIVER, STOMACH OR BLOOD OR HAVE OTHER IMMUNE *211 DISORDERS, YOU SHOULD EAT THESE PRODUCTS FULLY COOKED.
In Louisiana, negligence claims are resolved by employing a duty/risk analysis. Perkins v. Entergy Corporation, XXXX-XXXX, p. 7 (La.3/23/01) 782 So.2d 606, 611. The determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of plaintiff's injury (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damage element). Perkins v. Entergy Corporation, XXXX-XXXX, p. 7 (La.3/23/01) 782 So.2d 606, 611.
The cause-in-fact element is generally the key determination in the dutyrisk analysis. Boykin v. Louisiana Transit Company, Inc., XXXX-XXXX, p. 8 (La.3/4/98) 707 So.2d 1225, 1230 (citations omitted). Cause-in-fact usually is a "but for" inquiry which tests whether the accident would or would not have happened but for the defendant's substandard conduct. Id. "Whether the defendant's conduct was a substantial factor in bringing about the harm, and, thus, a cause-in-fact of the injuries, is a factual question to be determined by the factfinder." Perkins, p. 9, 782 So.2d at 612 (citations omitted). An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Id. (citations omitted). In order to reverse a trial court's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous. Accordingly, even though the trial judge's finding regarding the cause-in-fact element is a factual finding entitled to great deference, this court must determine whether the trial court's conclusions were clearly wrong based on the evidence or clearly without evidentiary support. Id. at 10,782 So.2d at 613 (citations omitted)[4].
In this case, the DHH clearly failed in its duty under the Sanitary Code to ensure that the restaurant posted adequate warnings on its menus and above the bar. The question remains, however, whether the defendant's breach of duty was the cause-in-fact of plaintiff's injury.
The plaintiff's video deposition taken on January 30, 2002, was played to the court and entered into the record. In his deposition, Vargas stated that he was a regular at the restaurant, normally ordering either a shrimp poboy or seafood platter. He claimed that because he had a flyer that stated generally that the restaurant served po-boys and "freshly shucked oysters at the oyster bar," he had never looked at the restaurant's menu. Vargas claimed that he ate oysters only once at the restaurant because the restaurant advertised an oyster speciala dozen oysters for $5.00on flyers and a huge sign in front of the *212 restaurant. He explained that raw oysters in a restaurant were generally too "pricey" and that he usually bought them at WinnDixie and ate them at home. Vargas stated that although as a French Quarter artist he normally received a 15 % discount at the restaurant, he did not receive the discount on the oysters because the oysters were "on special." Vargas stated that he purchased the oysters "to go" from a temporary oyster bar set up between two doors serving oysters on the sidewalk. Vargas submitted into evidence a copy of the flyer, which lists the restaurant's attributes, including its location in the French Quarter overlooking Jackson Square and its availability for private parties, as well as some of its menu items such as "Freshly Shucked Oysters at the Oyster Bar, . . . Great Po-boys, . . . Cocktails to Go."
The restaurant manager testified at trial that oysters were never sold on the sidewalk or "to go" and that the restaurant never advertised specials on sidewalk billboards. The restaurant's receipts indicate only one dozen oysters were sold on the afternoon of July 11, 2001, for $7.95.
Accordingly, the evidence does not support a finding that the defendant's breach of duty was the cause-infact of the plaintiff's injury. The plaintiff specifically asserted that he never looked at the restaurant's menu and did not buy the oysters from the oyster bar. Thus, the defendant's failure to ensure that an adequate warning was posted on the restaurant's menu or over the oyster bar is not implicated. To find otherwise, that the defendant's breach of duty was the cause-in-fact of the plaintiff's injury, would necessarily require a finding that the defendant has a duty to insure that the warning be posted on any advertising flyer which mentioned oysters rather than the statutorily required "point-of-sale." Moreover, in light of the restaurant manager's testimony that oysters were never sold as a "take-out" item or on the sidewalk and the plaintiff's testimony that he bought the oysters from the sidewalk in a "to-go" container, a finding that the defendant's breach of duty was the cause-in-fact of plaintiff's injury would necessarily require that the defendant police all of the restaurants in the state to insure that no restaurant employee sells oysters, contrary to the rules of the restaurant, at a point-of-sale other than a table or oyster bar or allow oysters to be taken out of the restaurant by a customer. We do not read the statute to impose such a duty.

Conclusion
Based on the evidence presented, to conclude that the plaintiffs met their burden of proving by a preponderance of the evidence that the defendant's breach of duty was the cause-in-fact of the plaintiff's injury is unreasonable and clearly wrong. The trial court's finding of factual causation is not supported by the evidentiary record and, therefore, is manifestly erroneous. Accordingly, after examining the evidence in the light most favorable to the plaintiffs and according great deference to the factfinder, we reverse the judgment of the trial court.
REVERSED.
NOTES
[1] According to the Petition for Damages filed in the Civil District Court for the Parish of Orleans on January 22, 2002, Vargas and his wife, Kimberly, were residents of Jefferson Parish, but in his video deposition Vargas stated that he and his wife lived in the midcity area of New Orleans.
[2] Vargas's medical records indicate that he told his doctors that he had eaten the oysters several days before coming to the hospital and the restaurant's records indicate that someone bought a dozen oysters on the afternoon of July 11, 2001.
[3] In his petition, Vargas asserts he was taken to the University Medical Center in New Orleans.
[4] DHH argues that the appropriate standard of review is de novo in this case because the trial judge failed to make a specific finding as to the causal relationship between the warning in question and the plaintiff's injuries. Because the trial court's findings are ambiguous and could be interpreted as a finding that the DHH's breach of its duty to enforce the Sanitary Code was the cause-in-fact of the plaintiff's injury, we apply the manifest error standard of review.