WOESTE, Admr., Appellant,

v.

WASHINGTON PLATFORM SALOON & RESTAURANT et al., Appellees, et al.

[Cite as *Woeste v. Washington Platform Saloon & Restaurant,*
163 Ohio App.3d 70, 2005-Ohio-4694.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050030.

Decided Sept. 9, 2005.

72

Clifford C. Masch and Timothy B. Schenkel, for appellees.

William E. Santen Jr., for appellant.

---

SYLVIA S. HENDON, Judge.

{¶ 1} Plaintiff-appellant, Kimberly Woeste, administrator of the estate of Thomas Woeste, has appealed, on behalf of the estate's beneficiaries, the trial court's grant of summary judgment without explanation in favor of defendants-appellees, Washington Platform Saloon & Restaurant ("Washington Platform") and Johnny's Oyster and Shrimp, Inc. (hereinafter, "Johnny's").

## Vibrio Vulnificus

{¶ 2} Thomas Woeste died as a result of contracting the bacteria vibrio vulnificus after eating raw oysters at Washington Platform. Vibrio is a naturally occurring bacteria in oysters that are harvested in warm waters. The oysters ingest the bacteria as they filter feed. Vibrio has no effect on the large majority of the population; however, it can cause death or serious bodily injury to certain people with weakened or impaired immune systems. Woeste suffered from Hepatitis C and cirrhosis of the liver, making him particularly susceptible to vibrio.

{¶ 3} Woeste consumed approximately one dozen raw oysters while at Washington Platform. The oysters Woeste consumed were harvested in Texas by Johnny's. Washington Platform's menu contained a warning regarding the dangers of eating raw shellfish. Woeste, however, ordered the oysters without opening the menu and reading the warning. Woeste died one week after contracting vibrio from the raw oysters.

{¶ 4} Appellant contends that summary judgment was improper because genuine issues of material fact were present in the allegations against both Washington Platform and Johnny's. Appellant alleges that Washington Platform was both negligent and strictly liable for failing to adequately warn of the dangers of eating raw oysters and that the restaurant violated Ohio's Pure Food and Drug Law[1] by receiving and delivering adulterated oysters. Appellant further alleges that Johnny's was negligent for breaching a duty to keep the oysters refrigerated after harvesting them, that Johnny's should have been held strictly liable for failure to warn of the dangers associated with the oysters, and that Johnny's violated Ohio's Pure Food and Drug Law by receiving or distribut-

---

1. R.C. Chapter 3715.

ing adulterated oysters. Summary judgment was granted on all the estate's claims.

{¶ 5} Summary judgment may appropriately be granted when there exists no genuine issue of material fact, the movant is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion and that conclusion is adverse to the nonmoving party.[2] We review grants of summary judgment de novo, without any deference to the trial court's decision.[3] We now address the claims against each appellee in turn.

## Washington Platform

{¶ 6} Appellant claims that Washington Platform was both negligent and strictly liable for failing to provide an adequate warning regarding the dangers associated with raw oysters. "The standard imposed upon the defendant in a strict liability claim grounded upon an inadequate warning is the same as that imposed in a negligence claim based upon inadequate warning." [4]

{¶ 7} Ohio has adopted Section 402A of the Second Restatement of Torts regarding strict liability. This section provides, "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused * * *." Thus, for strict liability to be imposed, the product must be defective, and the defect must make the product unreasonably dangerous. A product may be defective because of an inadequate warning even if it contains no design or manufacturing defect.[5] For purposes of the claim against Washington Platform, we address only whether the warning provided was adequate. We reserve our analysis regarding the necessity of a warning for our discussion of the claim against Johnny's.

{¶ 8} R.C. 2307.76 provides the standard for determining when an inadequate warning makes a product defective. The following elements must be shown:

{¶ 9} "(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages; [and]

{¶ 10} "(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that

2.  *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189.

3.  *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

4.  *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 556 N.E.2d 1177.

5.  Id. at 255, 556 N.E.2d 1177.

risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm."

{¶ 11} After extensively reviewing the record, we conclude, as a matter of law, that no liability could have been imposed on Washington Platform for an inadequate warning. Washington Platform's menu contained a warning located directly below all the oyster entrees:

> Consumer Information: There may be risks associated when consuming shell fish as in the case with other raw protein products. If you suffer from chronic illness of the liver, stomach or blood, or if you are pregnant or if you have other immune disorders, you should eat these products fully cooked.

Appellant alleges that this warning was not adequate, because it did not warn of the possibility of death. We disagree. The warning complied with the standard established in R.C. 2307.76. Washington Platform was aware of the dangers associated with the oysters. This was evidenced by the warning present in its menu. We are persuaded that the warning provided was one that a manufacturer exercising reasonable care would have issued. It adequately put a patron on notice of the risks associated with eating raw shellfish, including raw oysters.

{¶ 12} Other states have found substantially similar warnings to be adequate. Louisiana mandates a warning that contains the language "[t]here may be a risk associated with consuming raw shellfish as is the case with other raw protein products. If you suffer from chronic illness of the liver, stomach or blood or have other immune disorders, you should eat these products fully cooked." [6] This warning is nearly identical to the warning provided by Washington Platform; in fact, Washington Platform's warning was slightly more detailed because it included the category of pregnant women, who are not listed in the Louisiana warning.

{¶ 13} Texas requires a warning stating that "there is a risk associated with consuming raw oysters or any raw animal protein. If you have chronic illness of the liver, stomach, or blood, or have immune disorders, you are at greatest risk of illness from raw oysters and should eat oysters fully cooked. If unsure of your risk, consult your physician." [7] Washington Platform's warning was substantially similar to this. Both mention stomach, liver, blood, and immune disorders. The main difference between the two warnings is that the Texas warning specifically refers to raw oysters. In our view, this is a distinction without a difference.

---

6. *Vargas v. Continental Cuisine, Inc.* (La.App.2005), 900 So.2d 208, 210–211, citing Louisiana Sanitary Code 23:006–4.

7. Section 229.164(r), Title 25, Tex.Adm.Code.

Washington Platform instead used the term "shellfish." This was obviously a broader term, but we conclude that a reasonable consumer would have been aware that this term included oysters.

{¶ 14} There is one additional fact that is particularly telling. In her deposition, Kimberly Woeste, Woeste's wife, discussed Washington Platform's warning. She stated that if Woeste had in fact read the warning, he would not have eaten the raw oysters. It is difficult to deem the warning inadequate when we are presented with evidence that the warning would have prevented Woeste from eating the oysters. Washington Platform cannot be subjected to liability for Woeste's failure to read the warning provided in the menu. Our reasoning is supported by the Second Restatement of Torts, which provides that "[w]here warning is given, the seller may reasonably assume that it will be read and heeded." [8]

{¶ 15} Appellant argues that warnings should have been placed in more visible locations throughout the restaurant. While this undoubtedly would have ensured that more people would have seen the warning, it was both unreasonable and impractical. Washington Platform located the warning on its menu next to the food item that necessitated the warning. Considering the totality of the circumstances, including the nature of the restaurant business and the dangers associated with raw shellfish, we hold that the warning was positioned in the most reasonable location.

{¶ 16} Appellant also alleges that Washington Platform violated Ohio's Pure Food and Drug Law by serving adulterated food. Food is considered adulterated under the following circumstances:

{¶ 17} "It bears or contains any poisonous or deleterious substance that may render it injurious to health; but in case the substance is not an added substance, the food shall not be considered adulterated if the quantity of the substance in the food does not ordinarily render it injurious to health." [9]

{¶ 18} Vibrio is not an added substance. It is a naturally occurring bacteria that is taken in as the oysters filter feed. Because it is naturally occurring, vibrio cannot adulterate the oysters unless the amount of vibrio present in a particular oyster would ordinarily render it injurious to health. This was not the case here. Vibrio has a minimal effect on the general population. At most, it can cause indigestion or diarrhea; it is not commonly injurious to health. Vibrio is only deadly to those with weakened immune systems or stomach disorders. Tragically, Woeste fell into the latter category. Because the bacteria does not affect the

---

8. Restatement of the Law 2d, Torts (1965), Section 402A, Comment *j*.

9. R.C. 3715.59(A).

great majority of those who eat raw oysters, we conclude that the oysters in this case were not adulterated.[10]

## Johnny's

{¶ 19} Appellant also alleges that genuine issues of material fact exist as to whether Johnny's negligently failed to refrigerate the oysters after they were harvested, whether Johnny's failed to properly warn of the dangers of eating raw oysters, and whether Johnny's violated Ohio's Pure Food and Drug Law by distributing adulterated oysters. We need discuss only the first two issues, as we have already determined, as a matter of law, that the oysters were not adulterated.

{¶ 20} To succeed on its common-law negligence claim, appellant had to show that Johnny's had a duty to refrigerate the oysters, that Johnny's breached its duty by failing to refrigerate, and that the breach caused the harm Woeste suffered. If the temperature of an oyster is too high, the number of vibrio present in the oyster will multiply. Because of the risk associated with oysters containing vibrio, especially an excess amount of vibrio, it is clear that Johnny's did have a duty to keep the oysters cool. So we must now determine whether there was evidence to support a finding that the duty was breached.

{¶ 21} Johnny's did not personally harvest the oysters from the ocean. The harvesting process began when a particular company or agent leased the oyster beds from the state of Texas's General Land Office. Two such companies that Johnny's commonly did business with were "Oysters R Us" and "Shrimps R Us." The record indicates that the particular oysters in question came from a bed leased to an individual agent, Selman Halili. The particular agent or company then directed the Texas Parks and Wildlife Office to issue a permit to Johnny's, and this permit allowed Johnny's to obtain the right to harvest the beds. Johnny's would then hire a vessel to go out and harvest the oyster beds; the hired vessel would receive a copy of Johnny's permit from the Texas Parks and Wildlife Office. Once the hired vessel returned to land with the oysters, Johnny's placed them on a refrigerated truck and transported them to a supplier. If a truck was not immediately available, the sacked oysters were placed in a cooler and refrigerated until a truck arrived. The supplier then shipped the oysters to their final destination, for example, a restaurant such as Washington Platform.

---

10. See *Fouke & Reynolds v. Great Lakes Terminal Warehouse* (1972), 33 Ohio App.2d 273, 60 O.O.2d 397, 294 N.E.2d 245 (fish containing a large quantity of mercury, a substance natural to the fish, were not adulterated, because there was no proof that the quantity of mercury in them was ordinarily injurious to health).

■ {¶ 22} We can find no evidence in the record that Johnny's failed to refrigerate the oysters during the harvesting process. It is unchallenged that Johnny's was not responsible for any actions taken by workers on the vessels that did the harvesting. These workers were independent contractors, and an employer is generally not liable for the negligent acts of its independent contractors.[11] Furthermore, there is no evidence in the record indicating that the oysters were exposed to high temperature. Woeste's wife ate from the same batch of oysters, albeit in a smaller quantity, and suffered no adverse effects. We conclude, as a matter of law, that Johnny's breached no duty regarding the temperature of the oysters.

■ {¶ 23} The final claim of the administrator related to the warnings provided by Johnny's. Johnny's placed a warning on each sack of oysters it distributed. This warning was substantially similar to the warning provided by Washington Platform, which we have already held was adequate:

> There is a risk associated with consuming raw oysters or any raw animal protein. If you have chronic illness of the liver, stomach or blood or have immune disorders, you are at great risk of serious illness from raw oysters and should eat oysters fully cooked. If unsure of your risk, consult a physician.

This warning complied with the standards established by R.C. 2307.76. The warning set forth the potential dangers in more detail than the Washington Platform warning. It specifically referred to raw oysters, the food product at issue in this case. It further stated that consumers were "at great risk of serious illness from raw oysters." In our view, the warning was not rendered deficient by its failure to include death as a possible consequence of eating raw oysters. The warning clearly indicated that severe consequences could result, and it placed anyone suffering from a mentioned illness or disorder on notice. It was one that a manufacturer exercising reasonable care would have provided.

■ {¶ 24} Johnny's nonetheless contends that it owed no duty to issue a warning because the oysters were not unreasonably dangerous or defective. This issue may be mooted by our determination that the warning actually issued was not legally deficient, but we address it for future guidance.

{¶ 25} There are two tests to determine whether a food product is defective or adulterated: the foreign/natural test and the reasonable-expectation test. Ohio has not formally adopted either test. Both are summarized in *Mathews v. Maysville Seafoods, Inc.*[12] Under the foreign/natural test, a consumer cannot recover for injuries caused by a substance that is natural to the food eaten. And

---

11. *Pusey v. Bator* (2002), 94 Ohio St.3d 275, 278, 762 N.E.2d 968.

12. *Mathews v. Maysville Seafoods, Inc.* (1991), 76 Ohio App.3d 624, 602 N.E.2d 764.

under the latter test, the focus is on whether a consumer would reasonably expect to find the substance in the particular food item being ingested.[13]

{¶ 26} Raw oysters containing vibrio are not defective or adulterated under either test. We have already stated that vibrio is natural to the oysters. They encounter it in their natural environment and ingest it as they feed. We further hold that one can reasonably expect vibrio to be present in raw oysters. Raw oysters undergo no processing before they are served; rather, consumers receive the oysters in their natural state.[14] "[A] consumer should expect substances that are indigenous to the organism in its natural state to be present when he or she receives it."[15] Although vibrio does not render the oysters defective under either of these tests, our analysis as to whether a warning was necessary does not end.

{¶ 27} A product, though not defective in its present state, may be defective if it contains an unreasonable risk of harm that could be avoided if accompanied by an adequate warning.[16] Similarly, certain products that are not unreasonably dangerous on their face may become unreasonably dangerous unless accompanied by an adequate warning.[17] Raw oysters containing vibrio are not adulterated or defective; they do, however, pose an unreasonable risk of serious injury or death to people with certain stomach disorders or weakened immune systems. Under these circumstances, a duty to warn of the potential harm caused by vibrio does arise.

{¶ 28} This is not to say that a seller or manufacturer must warn of every possible risk that a food item poses. One need not warn of common risks or allergies.[18] When, however, a seller "has reason to anticipate that [a] danger may result from a particular use * * * he may be required to give adequate warning of the danger."[19] Both Washington Platform and Johnny's were aware that the presence of vibrio in raw oysters could cause serious harm, and both were required to, and did, adequately warn of such risks.

---

13. Id. at 625, 602 N.E.2d 764.

14. *Clime v. Dewey Beach Ent., Inc.* (D.Del.1993), 831 F.Supp. 341, 349.

15. Id.

16. *Edwards v. Hop Sin, Inc.* (Ky.App.2003), 140 S.W.3d 13, 15.

17. Restatement of the Law 2d, Torts (1965), Section 402A, Comment *j*.

18. Id.

19. Restatement of the Law 2d, Torts (1965), Section 402A, Comment *h*.

{¶ 29} Furthermore, Ohio has since promulgated a rule imposing a duty to warn.[20] Because this law did not take effect until after Woeste had passed away, it was not applicable to this case; it does, however, codify the duty to warn for all present and future cases. The statute provides the following:

{¶ 30} "(1) [I]f an animal food such as beef, eggs, fish, lamb, milk, pork, poultry, or shellfish is served or sold raw, undercooked, or without otherwise being processed to eliminate pathogens* * * the license holder shall inform consumers of the significantly increased risk of consuming such foods by way of a disclosure and reminder * * *.

{¶ 31} "(2) Disclosure shall include:

{¶ 32} "(a) A description of the animal-derived foods, such as 'oysters on the half-shell (raw oysters)' * * *; or

{¶ 33} "(b) Identification of the animal-derived foods by asterisking them to a footnote that states the items are served raw or undercooked * * *."

{¶ 34} Ohio clearly requires a duty to warn of the dangers associated with eating raw oysters, and Johnny's arguments to the contrary fail. Fortunately for Johnny's, an adequate warning was issued in this case, and the company faced no liability for failure to adequately warn.

### Conclusion

{¶ 35} After a detailed and thorough review of the record, we conclude that no genuine issue of material fact exists. We affirm the entry of summary judgment for both Washington Platform and Johnny's.

Judgment affirmed.

GORMAN, P.J., and SUNDERMANN, J., concur.

---

20. Ohio Adm.Code 3717–1–03.5(E).